RARICK ET AL., APPELLEES, *v.*
BOARD OF COUNTY COMMISSIONERS
OF GEAUGA COUNTY, APPELLANT.

[Cite as Rarick v. Bd. of County Commrs. (1980),
63 Ohio St. 2d 34.]

(Nos. 79-798 and 79-799—Decided July 2, 1980.)

---

*Messrs. Lucas, Prendergast, Albright, Gibson, Newman & Gee* and *Mr. Robert J. Walter,* for appellees.

*Mr. John F. Norton,* prosecuting attorney, and *Mr. Richard J. Makowski,* for appellant.

*Per Curiam.* Appellant argues initially that, because the Raricks have been designated as unclassified, the State Personnel Board of Review did not have jurisdiction over appeals from their terminations. However, as this court stated in *Yarosh* v. *Becane* (1980), 63 Ohio St. 2d 5, in paragraph two of the syllabus:

"The State Personnel Board of Review has jurisdiction over appeals from removals of public employees if it determines that such employees are in the classified service, regardless of how they have been designated by their appointing authorities."

As a consequence of this holding, which applies with equal force to the case at bar, the sole question before this court is whether the positions of Building Service Superintendent and Assistant Building Service Superintendent in Geauga County are in the classified service. If so, the State Personnel Board of Review had jurisdiction over the appeals.[1]

R. C. 124.11(A)(9) places in the unclassified service:

"The deputies and assistants of elective or principal executive officers authorized to act for and in the place of their principals, or holding a fiduciary relation to such principals and those persons employed by and directly responsible to elected county officials and holding a fiduciary or administrative relationship to such elected county officials, and

---

[1] Appellees have not claimed that the procedure by which their positions were designated, after many years of service, to be in the unclassified service was in any way contrary to the civil service statutes or to the Due Process Clause. Neither have they claimed the terminations to be unconstitutional. See *Branti* v. *Finkel* (March 31, 1980), 48 U.S.L.W. 4331. As a consequence, the sole issue before this court is whether the duties assigned and performed by the Raricks for the commissioners who terminated their employment placed them within R. C. 124.11(A)(9).

the employees of such county officials whose fitness would be impracticable to determine by competitive examination***."

It is clear that the Raricks are directly responsible to the county commissioners. The issue is whether they are in a fiduciary or administrative relationship with the commissioners.

In order to determine whether a person is in an administrative or fiduciary position with an appointing authority, all duties, both assigned and performed, respecting the position must be evaluated. *In re Termination of Employment* (1974), 40 Ohio St. 2d 107.

In *Yarosh, supra,* we defined the terms fiduciary and administrative in their context within the constitutionally mandated civil service system. Section 10, Article XV of the Ohio Constitution requires that all public positions be filled on the basis of competitive testing as far as practicable. We construed the terms fiduciary and administrative as attempts to define positions where testing is not practicable. We held that positions qualify as being in administrative or fiduciary relationships with their appointing authorities if they are positions requiring personal qualities of a highly subjective nature. In such positions test results cannot be expected to provide a proper basis for appointment.

Under *Yarosh* and *In re Termination,* a position is in a fiduciary relationship with the appointing authority when the authority cannot be expected to delegate the duties of that position to the average employee possessing any required technical knowledge and a knowledge of what is expected of him. A position is in an administrative relationship with the appointing authority when the authority must rely on the personal judgment and leadership abilities of the employee occupying that position.

Duties which are closely supervised by the appointing authority do not place a position in a fiduciary or administrative relationship with the authority; no special confidence and trust in an employee's abilities and integrity is involved. In the case at bar, Rarick's contracting out for snow removal services, even to themselves, did not place them in either a fiduciary or administrative relationship with the com-

missioners.[2] Similarly, the fact that Rarick's recommendations on hiring or firing were always adopted did not place him in an administrative or fiduciary position with the commissioners. The commissioners are expected to exercise independent judgment in making such determinations. They are expected to inquire into the underlying rationale for the recommendation and they can choose not to follow it. The determination belongs to the commissioners and there is no true delegation of authority requiring personal, highly subjective qualities.

It was shown that the Raricks had access to all the rooms in the county buildings. Appellant asserts that this access placed the Raricks in a fiduciary role. However, other maintenance personnel had keys as well. Clearly, the commissioners thought that all cleaning help could be expected to handle this responsibility. This responsibility, which clearly is not supervisory, and thus not administrative, is not fiduciary in nature either.

However, the positions which the Raricks occupied involved two duties, assigned and performed, which did place them in the unclassified service. These are the duty to purchase supplies through blanket purchase orders and the duty to supervise and arrange for the work of the building staff.

The Raricks were directly entrusted by the county commissioners with the duty of supervising the work of the building maintenance staff, and with arranging that the work was timely and diligently done. In entrusting the work to the Raricks, the county commissioners were delegating a duty it was their responsibility to see was properly done, and in so doing, the commissioners had to rely on the Raricks' personal judgment and supervisory abilities.

In addition, the commissioners delegated substantial purchasing duties to the Raricks. The blanket purchase orders allowed the Raricks to purchase needed supplies wherever they chose; they merely gave the order number to the seller. A purchase order was limited to $300; but when this limit was met, the clerk of the county commissioners routinely issued

---

[2] It is not contended that there is any basis for distinguishing the assistant's position from the superintendent's. Thus, we treat the positions as essentially having the same duties and the superintendent's duties control our disposition on the issue of whether both positions are unclassified.

another purchase order upon the Raricks' request. It was as if the Raricks were given $300 and forced to account for it after it was spent. The accounting was automatic, for the bills for the purchases were sent to the commissioners who then paid for the goods. Trust in the Raricks' honesty and judgment was required.[3]

Both the purchasing of supplies and the supervising of the building staff were primary duties of the positions held by the Raricks, and these duties placed the positions of Building Service Superintendent and Assistant Building Service Superintendent of Geauga County in an administrative and fiduciary relationship with the county commissioners.

Accordingly, the judgments of the Court of Appeals are reversed.

*Judgments reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

---

[3] It may be possible that assignment of such a duty, if designed as a subterfuge to making a position unclassified, would not be sufficient to so designate a position; however, appellees make no such contention in the case at bar.