OPINION
{¶ 1} Timashay Malone, appellant, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the trial court granted Franklin County Children Services' ("FCCS"), appellee's, motion to dismiss her objections to the magistrate's decision and adopted the magistrate's decision.
 {¶ 2} Appellant is the mother of Deion Malone, appellee, who was born on September 9, 2000. Clifton Vinson, appellee, is Deion's father. Lillian Chatman, appellee, is Vinson's mother. The state of Ohio is also an appellee in this case. On May 7, 2002, Chatman filed a complaint alleging that Deion was a dependent child pursuant to R.C. 2151.04 and requesting that she be granted temporary custody of Deion. At the time of the complaint, appellant was a minor, as was Vinson. On May 17, 2002, a preliminary hearing was held, and the court issued a temporary order of custody to FCCS. The matter proceeded to trial on July 25 and August 5, 2002. After the trial, the magistrate found Deion to be a dependent child, committed Deion temporarily to the custody of Chatman, placed Deion under the court-ordered protective supervision of FCCS, and granted appellant supervised visitation. On August 19, 2002, the magistrate's decision was filed with the court by journal entry.
 {¶ 3} On September 16, 2002, appellant filed objections to the magistrate's decision. On May 13, 2003, FCCS filed a motion to dismiss appellant's objections as being untimely filed. At the objections hearing on May 15, 2003, the trial court found that appellant's objections were untimely pursuant to Juv.R. 40 and dismissed the objections.
Appellant appeals the judgment, asserting the following six assignments of error:
FIRST ASSIGNMENT OF ERROR:
The Trial Court Abused its Discretion by Failing to Hear Ms. Malone's Trial Counsel's Objections on the Merits and by Failing to Sustain Them.
SECOND ASSIGNMENT OF ERROR:
Ms. Malone was denied Effective Assistance of Counsel under Stricklandv. Washington, 466 U.S. 668 (1984), Because 1) Trial Counsel's Performance Fell Below an Objective Standard of Reasonableness; and 2) There is a Reasonable Probability that, but for her Trial Counsel's Errors, the Result of the Proceeding Would have been Different in Light of the Totality of the Evidence.
THIRD ASSIGNMENT OF ERROR:
Ms. Malone was Denied Effective Assistance of Counsel Because the Court did not Comply with Relevant Rules and Statutes Governing Dependency Proceedings in Juvenile Court, and her Attorney did not Object.
FOURTH ASSIGNMENT OF ERROR:
The Trial Court Erred in Holding that Deion Malone, a Minor Child, was dependent, and that the Child Should be Placed with Deion's Paternal Grandmother, Lillian Chatman, Because Ms. Chatman Failed to Prove Dependency by Clear and Convincing Evidence as Required by O.R.C. Section2151.35(A), Because the Holding was Not Supported by Sufficient Evidence, and Because the Holding was Against the Manifest Weight of the Evidence.
FIFTH ASSIGNMENT OF ERROR:
The Dispositional Order Awarding Temporary Custody to Lillian Chatman Unconstitutionally Deprived Ms. Malone of Due Process of Law.
SIXTH ASSIGNMENT OF ERROR:
The Trial Court's Admission of Testimony from Ms. Tammy Borjon, Caseworker, on the Issue of Ms. Malone's MRDD diagnosis, and on Deion Malone's Speech and Language Skills, was an Abuse of Discretion, because Her Testimony on these Issues was Unreliable, Unscientific and Inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc.509 U.S. 579 (1993), Because it was based upon Inadmissible Hearsay, because there was no Proper Foundation for this Testimony, Because Ms. Borjon was not Properly Qualified as a Psychologist or Physician and Because it Violates O.R.E. 702.
 {¶ 4} We will address appellant's fourth assignment of error first, as our determination of such affects several other arguments contained in other assignments of error. Appellant argues in her fourth assignment of error that the trial court erred in holding that Deion was dependent and that the child should be placed with Chatman because the state failed to prove dependency by clear and convincing evidence and because the holding was against the manifest weight of the evidence.
 {¶ 5} A finding of dependency must focus upon the condition of the child, and whether the child is receiving proper care, rather than any faults exhibited by the parents. In re Bibb (1980), 70 Ohio App.2d 117. A finding of dependency also must be established by clear and convincing evidence. R.C. 2151.35(A). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence, but does not reach the extent of the certainty required to establish "beyond a reasonable doubt" in criminal cases. It is that quantum of evidence which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Crossv. Ledford (1954), 161 Ohio St. 469. Once the clear and convincing standard has been met to the satisfaction of the juvenile court, a reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy the burden of proof. Inre Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368.
 {¶ 6} Moreover, because a claim that there was a failure to meet the requisite burden of proof essentially challenges the weight given by the trial court to the evidence in the record, a reviewing court may not reverse the trial court's ruling unless the judgment was against the manifest weight of the evidence. See In re Haker (Dec. 3, 1999), Portage App. No. 98-P-0106. When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the findings of the trial court were correct. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77.
 {¶ 7} R.C. 2151.04(C), under which the complaint was filed, defines "dependent child" to include any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" At the hearing, appellant testified that she was 17 years old and a sophomore in high school. She said Deion's father is in juvenile detention for three years for stealing cars, and she has no contact with him. Because she did not get along with her mother, FCCS placed appellant with Jonetta Knapp, her aunt. She has lived with Knapp at her current address for two months, in Portsmouth, Ohio, for six weeks prior to that, and in Columbus, Ohio, for ten months prior to that. The apartment in which she currently resides with Knapp and her niece and nephew has two bedrooms. If she were granted custody of Deion, he would sleep in her room in a separate bed.
 {¶ 8} In school, appellant is enrolled in special classes because she does not catch on to things as fast as other students. She plans to finish school and go to college. She would like to be a cosmetology nail technician, which would take about two years of schooling after she graduates from high school. She testified she has never been arrested or convicted of a crime and does not use drugs or alcohol. She has no job but receives a social security check for approximately $500 per month because of her learning disability. She does not have a checking or savings account. Appellant said she has taken a lot of parenting classes and was enrolled in one at the time of the hearing. When asked why she was able to take care of her son, appellant said because she was his mother, she gave birth to him, she has done everything she can do for him, and she shows him love. She would also buy him things but not everything he wants. She explained what she would give him for dinner and said if he was throwing a tantrum, she would count to five, and if that did not work, he may get a "little swat" on his behind. Appellant also stated that, if she is given custody, she will take him to medical appointments and school and read him books. She knows his clothing and shoe size. She said she knows she would not be able to take care of Deion all by herself, but she would have help if she needed it. Appellant also testified that, if she got a job, she would work four hours per day, five days per week. Appellant said she could get Knapp to babysit for Deion when she is in school, or, if Knapp got a job, she would hire a babysitter or have Chatman babysit. She stated that Knapp does not work, and she does not know her sources of income.
 {¶ 9} Chatman has been taking care of Deion since he was a baby, but appellant visits him on weekends. To see her son at Chatman's house, appellant rides the bus. Appellant said that, Chatman originally started taking care of Deion because she had to go to school, and her mother would not help her. At the time of the hearing, she had not seen Deion for three weeks. She normally sees him once per week for approximately two or three hours. She admitted that she does not attend any of Deion's medical appointments or any of his FCCS assessments. Appellant testified that, during the previous summer, when she was not in school, Deion lived with her half the time and Chatman the other half. Prior to the filing of Chatman's complaint, she thought the childcare arrangement was working well. She has not brought Chatman clothes or food to help with Deion, but she said Chatman never asked her to bring anything. Deion has medical coverage through the government. Appellant testified that Chatman is capable of taking care of Deion and has done well taking care of him.
 {¶ 10} Tammy Borjon, Deion's FCCS caseworker, testified that appellant is MRDD (mentally retarded/developmentally disabled). She said educationally, appellant is between a first and third-grade level. This testimony was based upon a report that was not admitted into evidence. She knows appellant receives social security for being MRDD. Borjon testified that Deion has also been assessed and diagnosed with developmental delays. This testimony was also based on reports not entered into evidence. Deion has speaking, cognitive, and motor skills delays, and Franklin County MRDD is working with him. Borjon said she has never heard Deion say a word during the three or four visitations she has witnessed. She has tried to talk to appellant about Deion's learning problems, but she does not know whether appellant understands her own or her son's disabilities. She does not believe appellant has the ability to identify delays in Deion or to take proper care of Deion. She said appellant has not gone to any of Deion's assessments. Borjon also testified that, with appellant having limitations, being in school, and wanting to get a job, she may not be able to care for Deion's special needs.
 {¶ 11} Her home study of Knapp's home found it adequate, but that was based on the impression that only Knapp and appellant lived there. However, she questions whether the environment at Knapp's house is suitable for caring for Deion. Appellant's current apartment is the third place she has lived in the past year. For some unknown reason, Knapp decided to move to Portsmouth in the middle of the school year, and only stayed there for six weeks. Borjon thought those actions showed instability. Further, Knapp has not had any visitations with Deion since FCCS became involved with the case, and she has seen no evidence of any bond between them.
 {¶ 12} Borjon also noted that appellant's mother suffered severe abuse as a child, and she is worried about that pattern continuing. That appellant does not have a bond with her own mother also causes Borjon concern because she may not have learned any parenting skills from her. Borjon has never seen any parenting certificates from appellant, although she knows appellant is taking a 22-week parenting/life skills class. Borjon also sees a potential problem in returning custody to appellant because she does not have transportation. That appellant does not shop for herself and is not able to handle money on her own also concerns her. She remembered appellant buying Deion toys, candy, and an outfit. Borjon also testified that appellant has no crib or supplies for Deion. She said Deion's ADC, Aid to Dependent Children, benefits are not enough to take care of all of his monthly needs.
 {¶ 13} Borjon said she was not aware that appellant had had possession of Deion for a summer. She said Chatman told her it was only weekends. Borjon stated that, since November 2001, appellant has not had Deion for full weekend visits, only supervised visits. However, she believes appellant is bonded with Deion, and appellant should get as many visitations as possible.
 {¶ 14} Borjon further testified that FCCS's recommendation is to have custody granted to Chatman because Deion has lived with her most of his life, Chatman takes excellent care of him, and her home has adequate food and clothing. Borjon stated that Chatman can adequately care for Deion and is doing the things she needs to be doing to help him.
 {¶ 15} Chatman testified that she has taken care of Deion ever since he was born. She works as a childcare provider and babysits other children. At first, she started taking care of Deion Monday through Friday, but, when appellant started going to camps in the summer, she began taking care of him seven days per week. She has never asked for or received any money for taking care of Deion. Chatman stated that Deion is very active and needs constant supervision and care. He opens doors and drawers and tries to play with outlets. She must always hold his hand in public because he will run away otherwise.
 {¶ 16} Chatman said Deion's motor and language skills are very poor, and she has had to learn how to deal with him. She has people from different programs come to her house regularly to teach her how to help him. She said Franklin County MRDD has not tested Deion for MRDD because of his age, but he shows a lot of the signs of MRDD. Franklin County MRDD comes to her house about twice per month. Whenever she has told appellant about these appointments, appellant has not attended them and has never said she would like to attend them.
 {¶ 17} She said appellant has always had consistent visitations with Deion, lasting from one to five hours. Chatman does not permit appellant and Deion to go anywhere unless they are accompanied by a mentor or a supervisor. Deion has never been to appellant's current home. Appellant has never brought Chatman diapers for Deion. However, Chatman has no real concerns about appellant's care of Deion.
 {¶ 18} Chatman owns her home and has three and one-half bedrooms and one bathroom. Also living in her house is her 14-year-old son and her 13-year-old cousin. Deion has his own bedroom. She said she is capable of caring for somebody with MRDD and is committed to taking Deion to all of the services he needs. Chatman said Deion has bonded with her family, and he has friends in her neighborhood. However, Chatman stated that, when appellant is ready, she will have no problem relinquishing custody of Deion.
 {¶ 19} We find that there was sufficient clear and convincing evidence of Deion's dependency, and the judgment was not against the manifest weight of the evidence. There was competent, credible evidence that Deion's condition and environment was not stable. Within a one-year period, appellant had lived in three different places. Appellant admits that she could not take care of Deion on her own. Although appellant says that she would have help taking care of Deion, Deion's father is committed to a youth detention facility, and her aunt has had very little contact with Deion since he was born. Appellant is also not employed, and her only source of income is a monthly $500 social security check, of which her aunt gives her portions at her discretion. Although Deion does receive ADC, Borjon said that this amount is not enough to cover all of his monthly needs. Knapp also has no apparent sources of income. Appellant has no checking or savings account and does not do her own shopping. Although appellant claims she could financially afford to care for Deion's needs, her lack of financial and other support to Chatman while she has been taking care of Deion raises some doubt as to her ability and desire to financially support a child.
 {¶ 20} Further, appellant indicated that she originally could not care for Deion because she was in school; yet, she will be attending high school for two more years and then plans to attend cosmetology school for two more years. She also indicated that she would work until eight o'clock after school if she got a job. Her inability to arrange childcare prior to relinquishing care to Chatman raises doubt as to whether she would be able to arrange childcare in the future. In addition, Borjon does not think appellant would be able to handle all of the special services and time required for Deion's special needs. Also, appellant's house has only two bedrooms, and five people would be living there if Deion lived there, which Borjon testified was too crowded. Appellant also has never attended any medical appointments or assessments for Deion, even though Chatman has informed her of them.
 {¶ 21} Although it appears that appellant is taking steps and working toward being reunited with Deion, she has not reached the point where she can provide the proper environment for Deion's welfare. We find there was competent, credible evidence to support the finding that Deion is a dependent child.
 {¶ 22} With regard to the disposition, pursuant to R.C.2151.353(A)(3), if a child is adjudicated as abused, neglected, or dependent, the court may award legal custody of the child to any parent or other person who files a motion requesting legal custody. In doing so, the court shall consider the best interest of the child. R.C. 2151.42. The disposition must be supported by a preponderance of the evidence. Inre Willmann (1986), 24 Ohio App.3d 191, 198. A reviewing court will not reverse a trial court's disposition of a dependent child absent an abuse of discretion. In re Goff, Ashtabula App. No. 2002-A-0038, 2003-Ohio-1744. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217. After reviewing the record, we find the magistrate's disposition was supported by a preponderance of the evidence. Deion has lived with Chatman most of his life, and Borjon believed Chatman could adequately care for Deion. Chatman owns her home and has three and one-half bedrooms and one bathroom. Deion has his own bedroom there. Chatman testified she is capable of caring for somebody with MRDD and is committed to taking Deion to all of the services he needs. Deion has bonded with Chatman's family, and he has friends in her neighborhood. Appellant concedes that Chatman has done well taking care of Deion. Therefore, we find the magistrate's disposition was not against the manifest weight of the evidence and was supported by sufficient evidence. Appellant's fourth assignment of error is overruled.
 {¶ 23} Appellant argues in her fifth assignment of error that the dispositional order awarding temporary custody to Chatman unconstitutionally deprived her of due process. Specifically, appellant argues her rights were violated because mental disability is an insufficient predicate for abrogation of parental rights in the absence of showing the nature of the link between these capacities and a particular child's needs. However, in the present case, neither the dependency determination nor disposition were based upon appellant's alleged MRDD. This dependency case was brought pursuant to R.C. 2151.04(C), which considers the child's condition and environment, not R.C. 2151.04(B), which considers whether the child lacks adequate parental care by reason of the mental or physical condition of the child's parent. Although the magistrate did indicate in her written decision that "Timashay acknowledged she is learning disabled" and has "intellectual challenges," the dependency and dispositional determinations were clearly based upon Deion's overall condition, environment, and best interests. In fact, the magistrate specifically indicated during her oral pronouncement that the findings were not based upon appellant's alleged MRDD but upon the total circumstances: "Let me û and let me clarify my position, somewhat. Were we here only on û on Timashay's intellectual abilities and nothing else I think this would be an entirely different case. But Timashay comes here with an unfortunate set of circumstances." The magistrate made no attempt to directly link the dependency or dispositional findings to appellant's admitted disabilities. We find appellant's argument in this regard not well-taken. Appellant's fifth assignment of error is overruled.
 {¶ 24} Appellant argues in her sixth assignment of error that the trial court erred in admitting Borjon's testimony on the issue of appellant's MRDD diagnosis and Deion's speech and language skills because it was hearsay based upon an alleged report not admitted into evidence, and Borjon was not properly qualified as a psychologist or physician. As discussed above, the magistrate did not directly rely upon appellant's admitted learning disability in finding Deion dependent or in fashioning the disposition. Further, nowhere in her oral or written pronouncement did the magistrate ever discuss or rely upon any alleged diagnosis of appellant's MRDD or Borjon's testimony on such. The only comments the trial court made on the subject were based upon appellant's own testimony and an observation made in court. Thus, even assuming arguendo that the admission of Borjon's testimony on appellant's alleged MRDD was in error, any error was not prejudicial because the magistrate did not rely upon the evidence.
 {¶ 25} With regard to Borjon's testimony that Deion had been "diagnosed" with developmental delays, although the magistrate did comment on Deion's developmental problems, there is no indication that she relied upon Borjon's testimony with regard to the absent report. There was substantial other evidence presented on Deion's developmental delays. Borjon testified regarding possible developmental problems she noticed during her supervised visitations. Chatman also testified regarding Deion's developmental delays based upon her personal observations of Deion and the experiences of others who have dealt with children with developmental problems. She extensively discussed examples of Deion's behavior that made her suspect a problem. Chatman also testified that Franklin County MRDD and Help Me Grow have already started working with her and Deion. Appellant also acknowledged Deion's delays. Thus, the trial court clearly had competent evidence to note Deion's developmental problems even without Borjon's testimony based upon the unadmitted reports. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 26} Appellant argues in her first assignment of error that the trial court abused its discretion by failing to consider her objections to the magistrate's decision. The trial court found appellant's objections were not timely filed. Pursuant to Juv.R. 40(E)(3)(a), a party may file written objections to a magistrate's decision within 14 days of the filing of the decision. In the present case, the magistrate's decision was filed on August 19, 2002. Appellant filed objections to the magistrate's decision on September 16, 2002. Clearly, appellant's objections were not filed within the 14-day period prescribed by Juv.R. 40(E)(3)(a), and the trial court was within its discretion to dismiss them.
 {¶ 27} However, appellant argues that, pursuant to Civ.R. 6(B) andGibson v. Phillips Repair Serv. (Jan. 30, 1998), Highland App. No. 97CA931, the trial court also had the discretion to address the objections and abused its discretion in failing to do so. With regard to Civ.R. 6(B), such rule is contained in the Civil Rules. Because the current case involves a matter in the juvenile court, we must use the Juvenile Rules. The corresponding Juvenile Rule to Civ.R. 6(B) is Juv.R. 18(B), which is similar but not identical to Civ.R. 6(B). Juv.R. 18(B) provides:
When an act is required or allowed to be performed at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice, order the period enlarged if application therefor is made before expiration of the period originally prescribed or of that period as extended by a previous order, or (2) upon motion permit the act to be done after expiration of the specified period if the failure to act on time was the result of excusable neglect or would result in injustice to a party, but the court may not extend the time for taking any action under Rule 7(F)(1), Rule 22(F), Rule 29(A) and Rule 29(F)(2)(b), except to the extent and under the conditions stated in them.
We note that there is no case law discussing Juv.R. 18(B). Therefore, in addressing appellant's arguments, we must rely upon cases construing Civ.R. 6(B).
 {¶ 28} The court's determination under Juv.R. 18(B) rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. See State ex rel.Lindenschmidt v. Butler Cty. Bd. of Commrs. (1995), 72 Ohio St.3d 464,465 (discussing Civ.R. 6[B][2]). In the present case, appellant filed no formal motion requesting enlargement of time. Counsel for appellant merely stated at the objections hearing that he was asking for the court to address the objections within its discretion. We will assume arguendo that counsel's oral request constituted a sufficient motion pursuant to Juv.R. 18(B)(2).
 {¶ 29} As appellant's motion was made over eight months after the expiration of time for objections, she could only receive an enlargement of time to file objections pursuant to Juv.R. 18(B)(2). Under Juv.R. 18(B)(2), a trial court may grant an enlargement of time if the failure to act on time was the result of excusable neglect or would result in injustice to a party. To determine whether a defendant's conduct constitutes "excusable neglect," all of the surrounding facts and circumstances must be considered, and courts must be mindful of the admonition that cases should be decided on their merits where possible, rather than procedural grounds. Marion Production Credit Assn. v.Cochran (1988), 40 Ohio St.3d 265, 271 (discussing Civ.R. 6[B][2]). In the present case, appellant's counsel argued that his failure to timely file objections was for the following reason:
The argument is this is the first objection I've ever filed with this court. I'm doing this pro bono, so I didn't look it up. Somebody else told me it was twenty-eight to thirty days. I drafted the objection. I filed it. In the interest of justice we would ask the Court to go ahead and permit this to go forward. With regard to my client, I don't think she should be blamed in my failure to file it earlier.
 {¶ 30} The reasons cited by appellant's counsel fail to establish excusable neglect. Attorney ignorance as to the filing deadlines provided under the court rules is insufficient to constitute excusable neglect under Juv.R. 18(B)(2). See, e.g., In re Estate of Schmidt (Mar. 28, 1986), Ottawa App. No. C.A. OT-85-21 (attorney claim of ignorance of the requirement to file an answer is a totally unacceptable excuse and does not constitute excusable neglect under Civ.R. 6[B][2]); see, also, Stateex rel. Weiss v. Indus. Comm. (1992), 65 Ohio St.3d 470, 473 (attorney nonfeasance does not meet the "excusable neglect" standard of Civ.R. 6[B][2]). The conduct of appellant's attorney in failing to review Juv.R. 40 and in relying upon the representations of "somebody" to tell him when the objections were due fell substantially below what is reasonable under the circumstances. Such conduct constitutes inexcusable neglect for purposes of obtaining extension of time to perform the act. See Vanest v. Pillsbury Co. (1997), 124 Ohio App.3d 525, 536.
 {¶ 31} Further, we find no case law to support the theory that, because an attorney is working pro bono, the attorney should be held to a lesser standard than a paid attorney. An attorney's obligation to his client is not diminished by the pro bono nature of his representation. XuYong Lu v. Ashcroft (2001), 259 F.3d 127, 135. We also note that we are not certain that appellant's counsel in the present case was working pro bono. The record reveals the trial court's entry appointing appellant's counsel; thus, he was paid by the court to represent appellant. Regardless, whether counsel is retained or appointed, both are held to the same standards of professional competence. United States v. Collins
(1990), 920 F.2d 619, 625, fn. 8. In addition, the argument by appellant's counsel that appellant should not be "blamed" for his mistake is not persuasive. The failure of an attorney to file a timely pleading "should be imputed to the client." Weiss, supra, at 473. Therefore, we find appellant's reasons do not constitute excusable neglect.
 {¶ 32} Appellant also cites Gibson for the proposition that a trial court may hear untimely objections pursuant to Civ.R. 6(B) in the case of excusable neglect. However, we find Gibson inapposite for several reasons. First, in Gibson, the party filed objections within the 14-day limit in Civ.R. 53(E)(3)(a); it was only the transcript that the party failed to file within 14 days. Second, the holding in Gibson was premised upon the finding that, if written objections to a magistrate's report are filed after the expiration of the 14-day period but before the court enters final judgment, the court nonetheless may consider them, and such consideration will be construed as the sua sponte granting of leave to file late objections pursuant to Civ.R. 6(B). However, in the present case, the trial court entered its final judgment adopting the magistrate's decision on the same day the magistrate filed her decision. Third, the appeal in Gibson was upon the trial court's decision to hear the objections and not its decision to dismiss the objections, as in the present case. Given an abuse of discretion standard, the trial court's decision in Gibson was presumed to be correct, absent an abuse of discretion, which is the opposite posture of the current case before this court. Therefore, we find Gibson unconvincing. Accordingly, the trial court did not abuse its discretion in finding appellant failed to demonstrate excusable neglect.
 {¶ 33} Juv.R. 18(B), unlike Civ.R. 6(B), also gives the trial court discretion to enlarge the time for a filing when the failure to file would result in an injustice to a party. Because appellant incorrectly based her argument on Civ.R. 6(B), she presents no argument that the trial court's finding resulted in an injustice to her. We find no case law specifically defining "injustice to a party." Notwithstanding, we do not find the present circumstances arise to the level of creating an injustice to appellant. Of course, under any circumstances wherein a court denies an enlargement of time to a party, that party will lose any benefit of the filing. However, in the present case, the filing for which the trial court declined to allow an enlargement of time was appellant's objections. This is not a situation where a party was wholly precluded from asserting an argument, defense, or position. Appellant already had a full and fair opportunity to litigate the matters before the magistrate. Further, the circumstances in this case arose directly from the actions or inactions of the party or her counsel. Therefore, we find that any unfairness perpetrated upon appellant by dismissal of her objections was not so great as to justify disregarding the clear dictates of Juv.R. 40(E)(3)(a). Appellant's first assignment of error is overruled.
 {¶ 34} Appellant argues in her second assignment of error that appellant was denied effective assistance of counsel. To establish ineffective assistance of counsel, a defendant must meet a two-part test.Strickland v. Washington (1984), 466 U.S. 668, 686, 104 S.Ct. 2052. Initially, the defendant must show that counsel's performance was deficient. Id. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. This requires showing that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In effect, the defendant must show that there is a "reasonable probability" that, but for counsel's errors, the results would have been different. Id. at 694. "There is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy." State v. Nichols (1996), 116 Ohio App.3d 759, 764.
 {¶ 35} We will assume arguendo that the failure of appellant's counsel to file timely objections satisfies the first prong of the ineffectiveness test, in that such was so egregious that it fell outside the range of reasonable professional assistance. Thus, assuming appellant has satisfied the first prong of the ineffectiveness test, appellant must show there was a reasonable probability that, but for her counsel's error, the result would have been different. We find that, even had the trial court reviewed the objections, it would have found them without merit. Appellant's first objection was that the trial court erred in permitting evidence concerning allegations of dependency not contained in the complaint. Appellant claims that the complaint alleged only that the child was dependent based upon appellant's supposed MRDD, but, at trial, the state introduced evidence about appellant's financial situation and living arrangements. However, although the complaint did allege appellant was MRDD, it also asserted other allegations. The complaint also alleged that appellant was unable to care for the child without assistance, appellant was currently in FCCS placement herself, and the child's minor father was committed to the department of youth services. Importantly, the complaint alleged Deion was dependent based upon R.C. 2151.04(C), which looks to the child's overall condition and environment, not (B), which addresses a parent's mental condition. Thus, the magistrate did not err in accepting evidence on these issues, and appellant's first objection would have been without merit.
 {¶ 36} The second objection was that the magistrate erred in permitting the inadmissible testimony of Borjon regarding appellant's MRDD status based upon a report that was not admitted. The third objection was the magistrate erred in relying upon appellant's mental disability to find Deion dependent. The fourth objection was that the magistrate erred in allowing the state to use inadmissible and unreliable evidence to establish appellant's MRDD status. The fifth objection was that the state brought this action based on the disability of the appellant in violation of the Americans with Disabilities Act and Rehabilitation Act. The sixth objection was that the state failed to provide appellant with the necessary goods, services, facilities, advantages, or accommodations necessary to overcome her disability prior to the commencement of this action, resulting in a violation of the Americans with Disabilities Act and Rehabilitation Act. We already addressed the issues raised by these arguments above and found them not well-taken. Thus, these objections would have been without merit. Therefore, there was not a reasonable probability that, but for counsel's error, the result would have been different. Appellant's second assignment of error is overruled.
 {¶ 37} Appellant argues in her third assignment of error that she was denied effective assistance of counsel because the court did not comply with relevant rules and statutes governing dependency proceedings in juvenile court, and her attorney failed to raise these deficiencies with the magistrate. Appellant presents the following six "issues" under this assignment of error: (1) the trial court erred by failing to bifurcate the adjudicatory and dispositional hearings as required by Juv.R. 34; (2) in the alternative to the first issue, there was no waiting period between the two hearings and no consent to hold the dispositional hearing immediately after the adjudicatory hearing; (3) the trial court failed to commence and end the dependency proceedings as required by law; (4) because there was no dispositional hearing, the court failed to comply with the requirement of Juv.R. 34 that the dispositional hearing be held within 90 days of the date the complaint was filed, and the case must be dismissed; (5) appellant was prejudiced due to noncompliance with R.C. 2151.412(A)(2), which required that a case plan be filed prior to the adjudicatory hearing; and (6) noncompliance with the Juvenile Rules and statutes governing dependency proceedings constitutes plain error.
 {¶ 38} Initially, we must address several procedural difficulties that arise as a result of this assignment of error. None of appellant's six "issues" presented under this assignment of error are framed as an ineffective assistance of counsel claim. Rather, appellant's first five "issues" assert errors made by the magistrate. The sixth "issue" concedes that, because appellant's counsel did not object to these irregularities during trial, we must review the magistrate's errors under the plain error doctrine. Pursuant to App.R. 16(A)(7), an appellant must present his or her contentions with respect to each assignment of error presented for review and the reasons in support of those contentions. It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error. Charvat v. Oasis Mortg., Inc.,
Franklin App. No. 02AP-1090, 2003-Ohio-2879, at ¶ 6, citing Slyderv. Slyder (Dec. 29, 1993), Summit App. No. 16224, and Sykes Const. Co.v. Martell (Jan. 8, 1992), Summit App. No. 15034. "If an argument exists that can support this assignment of error, it is not this court's duty to root it out." Id., citing Cardone v. Cardone (May 6, 1998), Summit App. No. 18349. Thus, because appellant failed to support her assignment of error with an argument relating to ineffective assistance of counsel, we could disregard this error.
 {¶ 39} We further note that, not only did appellant's counsel not raise these irregularities during the hearing before the magistrate, he also failed to include them in his untimely objections to the trial court. Juv.R. 40(E)(3)(d) precludes a party from assigning as error on appeal a court's finding or conclusion if the party failed to object to such at the trial court level. We found above that the trial court did not err in declining to review appellant's untimely objections. However, even if we had found that the trial court should have addressed the untimely filed objections, appellant would have still waived the issues under the present assignment of error pursuant to Juv.R. 40(E)(3)(d) because these issues were not included in those untimely objections. Thus, we could disregard this assignment of error on this basis too. Despite these deficiencies, in the interests of justice we will briefly address these "issues" directly.
 {¶ 40} Appellant argues in the first issue that the trial court erred by failing to bifurcate the adjudicatory and dispositional hearings as required by Juv.R. 34. Juv.R. 34(A) requires that, after a child has been adjudicated dependent, the court may not issue a disposition until after holding a separate dispositional hearing. A review of the record reveals that the hearings were separate. The magistrate adjudicated the child to be dependent and then specifically asked whether the parties desired to address disposition, after which the parties gave a short statement as to disposition. They were free to submit more evidence or call witnesses, but they apparently declined. Thus, the hearings were separate and complied with Juv.R. 34(A).
 {¶ 41} Appellant argues in the second issue that the magistrate did not comply with Juv.R. 34(A) because she did not wait at least one day between the adjudicatory and dispositional hearings, and the parties did not consent to hold the dispositional hearing immediately after the adjudicatory hearing. Juv.R. 34(A) requires that at least one day elapse between the adjudicatory and dispositional hearings, unless the parties consent to holding the dispositional hearing immediately after the adjudication. A review of the record convinces this court that the parties consented to hold the dispositional hearing immediately after the adjudicatory hearing. We also note appellant alleged no prejudicial effect by the magistrate's actions.
 {¶ 42} Appellant argues in the third issue that the trial court failed to inform the parties of the substance of the complaint, the purpose of the hearing, and the possible consequences of the hearing prior to the adjudicatory hearing, as required by Juv.R. 29(B), and failed to advise the parties of their right to appeal after the dispositional hearing, pursuant to Juv.R. 34(J). However, even if the trial court did not comply with Juv.R. 29(B) and 34(J), because appellant contested the matter, was represented by counsel at trial, a full hearing was held on the merits, and appellant, in fact, appealed the trial court's judgment, we can find no prejudice under an ineffective assistance of counsel analysis.
 {¶ 43} Appellant argues in her fourth issue that, because there was no dispositional hearing, the court failed to comply with the requirement of Juv.R. 34 that the dispositional hearing be held within 90 days of the date the complaint was filed, and the case must be dismissed. As we found above, the trial court did hold a separate dispositional hearing; therefore, this argument is without merit.
 {¶ 44} Appellant argues in her fifth issue that she was prejudiced due to non-compliance with R.C. 2151.412(A)(2) and Juv.R 34(F), which requires that a case plan be filed prior to the adjudicatory hearing. The record reveals that a case plan hearing was held on August 19, 2002, and the case plan was filed on September 3, 2002, both of which were after the adjudicatory hearing on August 5, 2002. Thus, it is clear that the case plan was not filed prior to the adjudicatory hearing. However, appellant must demonstrate some sort of prejudicial effect. We find none. Appellant claims that FCCS's failure to file a case plan prejudices appellant because she did not know the agency's specific position prior to trial, thereby hampering her trial preparation. However, the purpose of a case plan is to remedy the situation that resulted in the child's removal and move toward reunification. In re Watts, Montgomery App. No. 19034, 2002-Ohio-2272. Further, appellant claims the fact that no case plan was filed prior to the adjudicatory hearing demonstrates a lack of action on the part of FCCS. However, outside of this assertion, there is no evidence to demonstrate a lack of action on behalf of FCCS. Because a case plan was not formally filed does not necessarily indicate that FCCS failed to work diligently with appellant. Furthermore, even if there was a lack of action on behalf of FCCS, such is not the result of any error by the magistrate or trial court. We also note that there is some question as to whether a prior case plan existed, as the September 3, 2002 document indicates it is an "amended case plan." In addition, trial counsel's failure to raise an issue with regard to FCCS's failure to timely file a case plan may have been the result of strategy. The action had already been dismissed and refiled once. Any delay could have been viewed by appellant and her counsel as only causing a longer delay until she could be eventually reunified with her son. Although we strongly urge compliance with the Revised Code and Juvenile Rules, under the circumstances of this case, we can find no prejudice. For these reasons, appellant's third assignment of error is overruled.
 {¶ 45} Accordingly, appellant's six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
KLATT, J., concurs.
LAZARUS, J., dissents.